UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
SHREVEPORT DIVISION

ROBERT DAVID TATE                          CIVIL ACTION NO. 5:13-cv-1253
     LA. DOC #419941                   SECTION P

VS.                                        JUDGE ELIZABETH E. FOOTE

JAMES LEBLANC, ET AL.                      MAGISTRATE JUDGE HAYES

<u>REPORT AND RECOMMENDATION</u>

Before the undersigned Magistrate Judge, on reference from the District Court, is a

Motion for Summary Judgment, [doc. # 114], filed by Defendants Chris Evans, Angie Huff, and

James LeBlanc.  Plaintiff opposes the Motion.  [doc. # 116].  For the reasons assigned below, it

is recommended that the Motion be **GRANTED IN PART AND DENIED IN PART**.

<u>Background</u>

*Pro se* Plaintiff Robert David Tate,[1] an inmate in the custody of Louisiana's Department

of Corrections ("DOC") and housed at the David Wade Correctional Center ("DWCC"), filed the

instant civil rights Complaint pursuant to 42 U.S.C. § 1983 on May 24, 2013, against the DOC

Secretary James LeBlanc, DWCC Warden Angie Huff, and Colonel Chris Evans.  [doc. # 1].

He complains that, despite laws and regulations to the contrary, he was exposed to

unreasonable and harmful amounts of environmental tobacco smoke ("ETS") in the prison

dormitory, the outdoor recreation areas, the walkways to and from the dining hall, and while

waiting in line at both the infirmary and the commissary.  *Id.* at 2-4.  He acknowledges that the

facility maintains a policy prohibiting indoor smoking, but claims that facility officials do not

enforce the policy.  *Id.* at 4.  He explains that "their policy of occasionally issuing Rule Violation

---

[1] Plaintiff proceeds *in forma pauperis*.  [doc. # 4].

Reports to inmates caught illicitly smoking amounts to a custom or practice of waiting for [his] exposure to occur and then haphazardly responding after the injuries have already occurred." *Id.*

He claims that the ETS aggravated his hypertension and caused him to have blood pressure issues, sleep apnea, breathing issues, and general pain and suffering. *Id.* at 3. He prays for money damages and injunctive relief. *Id.* at 5.[2]

## Law and Analysis

Defendants filed the instant Motion for Summary Judgment on July 8, 2014. [doc. # 114]. They contend that Plaintiff failed to exhaust his administrative remedies, that they are entitled to Eleventh Amendment immunity, and that they are entitled to qualified immunity because Plaintiff's allegations are not sufficient to support a constitutional violation. *Id.*

### I. Summary Judgment Principles

Summary judgment is appropriate when the evidence before the Court shows "that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a). A fact is "material" if proof of its existence or nonexistence would affect the outcome of the lawsuit under applicable law in the case. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A dispute about a material fact is "genuine" if the evidence is such that a reasonable fact finder could render a verdict for the nonmoving party. *Id.*

"[A] party seeking summary judgment always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if

---

[2] Plaintiff amended his Complaint on August 6, 2014, and added Sergeant R. Haynes as a Defendant. [doc. # 126]. Sergeant Haynes does not join in the instant Motion.

any,' which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986) (quoting *Anderson*, 477 U.S. at 247). "The moving party may meet its burden to demonstrate the absence of a genuine issue of material fact by pointing out that the record contains no support for the non-moving party's claim." *Stahl v. Novartis Pharm. Corp.*, 283 F.3d 254, 263 (5th Cir. 2002). Thereafter, if the non-movant is unable to identify anything in the record to support its claim, summary judgment is appropriate. *Id*. "The court need consider only the cited materials, but it may consider other materials in the record." FED. R. CIV. P. 56(c)(3).[3]

In evaluating a motion for summary judgment, courts "may not make credibility determinations or weigh the evidence" and "must resolve all ambiguities and draw all permissible inferences in favor of the non-moving party." *Total E & P USA Inc. v. Kerr–McGee Oil and Gas Corp.*, 719 F.3d 424, 434 (5th Cir. 2013) (citations omitted). While courts will "resolve factual controversies in favor of the nonmoving party," an actual controversy exists only "when both parties have submitted evidence of contradictory facts." *Little v. Liquid Air. Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994) (en banc). To rebut a properly supported motion for summary judgment, the opposing party must show, with "*significant* probative evidence," that a genuine issue of material fact exists. *Hamilton v. Segue Software, Inc.*, 232 F.3d 473, 477 (5th Cir. 2000) (emphasis added). "'If the evidence is merely colorable, or is not significantly probative,' summary judgment is appropriate." *Cutting Underwater Tech. USA, Inc. v. Eni U.S. Operating Co.*, 671 F.3d 512, 517 (5th Cir. 2012) (quoting *Anderson*, 477 U.S. at 248).

-----

[3] However, Rule 56 does not require a court to "sift through the record in search of evidence to support a party's opposition to summary judgment." *Willis v. Cleco Corp.*, 749 F.3d 314, 317 (5th Cir. 2014) (quoted source omitted).

Relatedly, there can be no genuine dispute as to a material fact when a party fails "to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial."  *Celotex Corp.*, 477 U.S. at 322-23.  This is true "since a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial."  *Id.* at 323.

When a movant bears the burden of proof on an issue, it must establish "beyond peradventure[4] all of the essential elements of the claim . . . to warrant judgment in [its] favor." *Fontenot v. Upjohn Co.*, 780 F.2d 1190, 1194 (5th Cir. 1986).  In other words, the movant must affirmatively establish its right to prevail as a matter of law.  *Universal Sav. Ass'n v. McConnell*, 1993 WL 560271 (5th Cir. Dec. 29, 1993) (unpubl.).

**II. Exhaustion**

Defendants first claim that Plaintiff failed to exhaust his administrative remedies because he failed to specifically name Defendants in his administrative grievance.  [doc. # 114-2, p. 6]. Pursuant to 42 U.S.C. § 1997e, as amended by the Prison Litigation Reform Act ("PLRA"), "No action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted."  42 U.S.C. § 1997e(a).  The "exhaustion requirement applies to all inmate suits about prison life, whether they involve general circumstances or particular episodes, and whether they allege excessive force or some other wrong."  *Porter v. Nussle*, 534 U.S. 516, 532 (2002).  It also applies to claims brought against defendants in their official and/or individual capacities.  *See e.g., Williams v. Henagan*,

---

[4] I.e., beyond doubt.

595 F.3d 610, 618 (5th Cir. 2010); *Hines v. Texas*, 76 Fed. App'x. 564 (5th Cir. 2003).

Exhaustion is mandatory, and is required even where the relief sought cannot be granted by the administrative process. *Woodford v. Ngo*, 548 U.S. 81, 85 (2006) (citations omitted).  All "available" remedies must be exhausted, whether speedy and effective, or not. *Porter*, 534 U.S. at 524.  "Proper exhaustion requires that the prisoner not only pursue all available avenues of relief but also comply with all administrative deadlines and procedural rules." *Johnson v. Kukua*, 342 Fed. App'x. 933, 934 (5th Cir. 2009) (citing *Woodford* 548 U.S. at 89-93)).  An untimely or otherwise procedurally defective administrative grievance does not satisfy the exhaustion requirement.  *Id*.

Under Louisiana law, the DOC, as well as each sheriff, is authorized to adopt an administrative remedy procedure at each respective institution.  LA. REV. STAT. § 15:1171.  The administrative remedy procedure is intended to resolve complaints and grievances that arise while the offender is in the custody of, or under the supervision of, the DOC or sheriff.  *Id*.  The procedure encompasses complaints and grievances for monetary, injunctive, declaratory, or other relief stemming, *inter alia*, from conditions of confinement, personal injuries, and medical malpractice.  *Id*.  These administrative procedures, when promulgated, provide the offender's exclusive remedy—to the extent that federal law permits.  *Id*.  Finally, "status as an 'offender' is determined as of the time the basis for a complaint or grievance arises.  Subsequent events, including posttrial judicial action or release from custody, shall not affect status as an 'offender' . . . ."  LA. REV. STAT. § 15:1171(D).

Here, Defendants adduce evidence indicating that Plaintiff completed the two-step administrative remedy process.  [doc. # 114-4, p. 3-5].  However, they argue that Plaintiff did not

5

exhaust his administrative remedies with respect to Defendants in particular because

"Defendants' names appear[] nowhere in the Administrative Remedy Procedure."  [doc. # 114-2,

p. 6].  The Fifth Circuit recently addressed a similar argument and reasoned:

> [T]he primary purpose of a grievance is to alert prison officials to a problem, not to provide personal notice to a particular official that he may be sued. Nothing in the PLRA requires prisoners to identify all defendants that they later sue.  Nevertheless, under the PLRA, a prisoner must provide administrators with a fair opportunity under the circumstances to address the problem that will later form the basis of the suit, and for many types of problems this will often require, as a practical matter, that the prisoner's grievance identify individuals who are connected with the problem. However, a grievance may sufficiently identify a person even without providing a name.

*Patterson v. Stanley*, 547 Fed. App'x 510, 512-13 (5th Cir. 2013) (internal citations and quotation

marks omitted).  In addition, in *Jones v. Bock*, 549 U.S. 199, 218 (2007), the Supreme Court

held, "The level of detail necessary in a grievance to comply with the grievance procedures will

vary from system to system and claim to claim, but it is the prison's requirements, and not the

PLRA, that define the boundaries of proper exhaustion."

Here, although Plaintiff does not identify any specific individual, the Court finds that

Plaintiff properly exhausted his remedies by giving Defendants notice and an opportunity to

address his grievances.  First, Defendants have not produced the relevant grievance procedure for

DWCC.  Thus, the Court cannot discern whether the procedure required Plaintiff to specifically

name any individual.  Next, and tellingly, Defendants Evans and Huff aver that they personally

"reviewed and responded unfavorably to [Plaintiff's] administrative grievance he filed

complaining of excessive exposure to Environmental Tobacco Smoke."  [doc. #s 114-5, p. 6;

114-6, p. 5].  In that regard, it is clear that those two Defendants were on notice of, and had an

opportunity to address, Plaintiff's grievance.

It is also apparent that the Defendants were on notice of Plaintiff's grievance because Plaintiff claimed that the ETS was widespread, not episodic. The Fifth Circuit has stated that a prison grievance form that fails to identify a particular individual may not give administrators an opportunity to remedy discrete conduct, but it "would alert administrators particularly to problems regarding the prison's housing and classification practices . . . ." *Johnson v. Johnson*, 385 F.3d 503, 522 (5th Cir. 2004). The ETS grievance at issue concerns the facility's housing practices and was, consequently, sufficient to place DWCC officials on notice of the allegedly systemic problem. Defendants' Motion should be **DENIED** accordingly.

**III. Eleventh Amendment Immunity**

Plaintiff does not specify whether he is suing Defendants in their individual capacity, official capacity, or both. Defendants claim that Plaintiff's failure to specify one or the other signifies that he is only suing them in their official capacity. [doc. # 114-2, p. 6]. The Court disagrees. "While some circuits require rigid pleading requirements to specify individual or official capacity in section 1983 suits, the Fifth Circuit looks to the substance of the claim, the relief sought, and the course of proceedings." *Forside v. Mississippi State Univ.*, 2002 WL 31992181, at *5 (N.D. Miss. Dec. 30, 2002) (internal citations omitted).

Here, the Court first observes that Plaintiff seeks monetary and injunctive relief. The Eleventh Amendment bars recovering *money* damages from state officials in their official capacity. *Oliver v. Scott*, 276 F.3d 736, (5th Cir. 2002). If Plaintiff was only suing Defendants in their official capacity, he would be unable to recover the monetary damages that he seeks. Next, the Court observes that Defendants raised qualified immunity as a defense in their answer and as an argument in the instant Motion. [*See* doc. #s 23, p. 2; 114-2, p. 9]. Defendants' actions

7

indicate that they interpreted Plaintiff's claims as ones against them in their individual capacity because qualified immunity is only available to defendants sued in their individual capacities. *See Matherne v. Wilson*, 851 F.2d 752, 759 (5th Cir. 1988).  In sum, the relief Plaintiff seeks, as well as the course of proceedings, indicate that Plaintiff is suing Defendants in both their individual and official capacities.

Insofar as Plaintiff asserts a claim against Defendants in their official capacities, Defendants contend that they are entitled to Eleventh Amendment immunity because state officials and employees "are not liable under Section 1983 for monetary damages."  [doc. # 114-2, p. 7].  Defendants' argument is well-taken.

It is well-settled that the Eleventh Amendment bars suits in federal court for money damages and injunctive relief filed by citizens of a state against their own state or state agency. *Darlak v. Bobear*,  814 F.2d 1055, 1059 (5th Cir. 1987).   "Claims under federal statutes do not override the Eleventh Amendment bar unless there is a clear showing of congressional intent to abrogate the bar."  *Id.*  On that score, "Section 1983 does not override the Eleventh Amendment bar."  *Id.*  The Amendment also bars a plaintiff's state law claims brought against Louisiana or a Louisiana entity in federal court because Louisiana has not waived its sovereign immunity. *Richardson v. Southern University*,  118 F.3d 450, 453 (5th Cir. 1997); La. Rev. Stat. § 13:5106.

That in mind, "State officers sued for damages in their official capacity are not 'persons' for purposes of the suit because they assume the identity of the government that employs them." *Hafer v. Melo*, 502 U.S. 21, 27 (1991).  The real party in interest in an official-capacity suit is the governmental entity, not the named official.  *Id.* at 25 (citing *Kentucky v. Graham*, 473 U.S 159,

8

166 (1985)); *see Turner v. Houma Mun. Fire and Police Civil Serv. Bd.*, 229 F.3d 478, 483 (5th Cir. 2000) (holding that official-capacity suits are generally "another way of pleading an action against an entity of which an officer is an agent."). The suit against a state official is "no different from a suit against the State itself." *Will v. Michigan Dept. of State Police*, 491 U.S. 58, 71 (1989). Here, the State of Louisiana is the real party in interest—through its arm, the DOC—and is thus entitled to Eleventh Amendment Immunity. *See Richardson*, 118 F.3d at 452 (noting that even though the plaintiff did not name the State of Louisiana as a defendant, the "suit may nonetheless succumb to Eleventh Amendment immunity if the State is the real party in interest.").

Accordingly, the Court recommends that Plaintiff's claim for monetary damages against Defendants in their official capacities be **DISMISSED WITH PREJUDICE**.[5]

## IV. Qualified Immunity

Defendants contend that they are entitled to qualified immunity because Plaintiff "makes no specific allegations of the violation of a clearly established constitutional right . . . ." [doc. # 114-2, p. 12]. When a defendant invokes qualified immunity, the burden shifts to the plaintiff to establish that the defense is inapplicable. *Club Retro, L.L.C. v. Hilton*, 568 F.3d 181, 194 (5th Cir. 2009) (citation omitted). A plaintiff's burden is two-pronged. *Id.* First, he must demonstrate that the defendants violated a constitutional right under current law. *Id.* "Second, he must claim that the defendants' actions were objectively unreasonable in light of the law that was clearly established at the time of the actions complained of." *Id.* (quoted source and internal

_____

[5] Defendants do not seek summary judgment on Plaintiff's injunctive relief claim against them in their official capacities.

quotation marks omitted).

A. <u>Whether Defendants Violated a Constitutional Right</u>[6]

Defendants contend that Plaintiff has failed to demonstrate that they violated his Eighth Amendment right to be free from cruel and unusual punishment.  [doc. # 114-2, p. 15].  More specifically, they claim that there is no genuine dispute as to whether they acted with deliberate indifference.  *Id.*  The Supreme Court, in *Helling v. McKinney*, 509 U.S. 25, 35 (1993), set forth a two-part test to determine whether an inmate's exposure to ETS violates the inmate's Eighth Amendment right to be free from cruel and unusual punishment.  An inmate must first prove that he is "being exposed to unreasonably high levels of ETS."[7]  *Id.*  Following that, an inmate must show that prison officials were deliberately indifferent to his plight.  *Id.*

i. <u>Deliberate Indifference</u>

"[D]eliberate indifference requires a finding of 'obduracy and wantonness, not inadvertence or error in good faith.'" *Callicutt v. Anderson*, 48 Fed. App'x. 916 (5th Cir. 2002) (quoting *Whitley v. Albers*, 475 U.S. 312, 319 (1986)).  Further:

[A] prison official cannot be found liable under the Eighth Amendment . . . unless

---

[6] Defendants first argue that Plaintiff fails to state a claim upon which relief can be granted because Plaintiff fails to allege that they were personally involved in the alleged violation of his Eighth Amendment right to be free from cruel and unusual punishment.  [doc. # 114-2, p. 13].  Defendants essentially ask the Court to assess the sufficiency of Plaintiff's Complaint.  However, as Defendants' brief relies on evidence outside of the pleadings, the Court construes the instant Motion as one for summary judgment and declines to address Defendants' argument.  *See Brand Coupon Network, L.L.C. v. Catalina Mktg. Corp.*, 748 F.3d 631, 635 (5th Cir. 2014) (holding "that the district court erred when it considered evidence outside the pleadings—and not referred to therein—without converting the motion to dismiss into a motion for summary judgment.").

[7] Notably, Defendants do not claim that there is an absence of a genuine dispute as to whether Plaintiff was exposed to unreasonably high levels of ETS.

10

> the official knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference.

*Id.* (quoting *Farmer v. Brennan*, 511 U.S. 825, 837 (1994)).  In evaluating deliberate indifference to ETS, courts consider factors such as the adoption of a smoking policy, the administration of that policy, and the realities of prison administration.  *Callicutt, supra* (citing *Helling*, 509 U.S. at 36-37).

Here, Defendants first present Plaintiff's administrative grievance.  In it, Plaintiff states that he has been exposed to excessive levels of ETS "every night from sundown until morning," that "[i]nmates smoke in the unit because they cannot go outside at night," and that the smoke is making it difficult for him to breathe and sleep.  [doc. # 114-4, p. 5].  Defendants next present a document entitled, "Offender Posted Policy #021."  [doc. # 114-4, p. 13].  They claim that DWCC inmates were placed on notice of revisions to the DOC's revised smoking policy through the posted policy.  [doc. # 114-2, p. 16].  The policy "warned offenders that violations of this Policy may be actionable under applicable provisions in the Disciplinary Rules and Procedures for Adult Inmates."  *Id.*

Defendants also present the affidavit of Defendant Evans.  [doc. # 114-5, p. 1].  Evans avers that DWCC employees never ignored the health risks associated with second-hand smoke.  *Id.* at 3.  To the contrary, he avers that the Offender Policy is enforced, violators are disciplined, and "[a]t not time following the [DOC's revised smoking policy] were offenders housed at DWCC allowed to smoke in a dormitory, or in a cellblock, of a DWCC Housing Unit."  *Id.* at 3-6.  He also avers that, from 2013 to the present, "there have been several signs posted throughout DWCC H4 Housing Dormitory Unit indicating that smoking was not allowed inside the Unit."

11

*Id.* at 4.

According to Evans, there were three correctional officers "constantly assigned" to Plaintiff's dormitory to address offender concerns and complaints. *Id.* at 4. From 2013 to the present, there was also a supervising officer assigned to Plaintiff's dormitory from 10:30 p.m. to 6:00 a.m. *Id.* Evans avers that he questioned the correctional officer and the supervising officer and neither recalled Plaintiff reporting a smoking violation in connection with Plaintiff's administrative grievance. *Id.* at 5. Evans further avers that he personally "reviewed, investigated, and responded" to Plaintiff's ETS administrative grievance, *Id.* Evans states that the grievance did not indicate that Plaintiff ever "brought a smoking violation, along with the name of the violator, to the attention of the Correctional Officer assigned to his housing section" prior to submitting the grievance. *Id.* Nor did Plaintiff personally inform Evans of any smoking violation. *Id.* Evans concludes that "his lack of knowledge as to the violator of the Department's Smoking Policies makes it difficult to discipline the violator. *Id.*

Defendants also present the affidavit of Defendant Huff, the Deputy Warden at DWCC. [doc. # 114-6, p. 1]. Huff also personally reviewed and evaluated Plaintiff's grievance. *Id.* at 4. Like Evans, Huff avers that Plaintiff failed to indicate in his grievance that, at any time prior to submitting the grievance, he "brought a smoking violation, along with the name of the violator, to the attention of the Correctional Officer assigned to his housing section . . . ." *Id.* Again like Evans, she avers that this lack of information "makes it difficult to discipline the violator." *Id.* She also states that offenders who violated the institution's smoking policies were disciplined. *Id.*

Finally, Defendants adduce eighty documents all entitled, "Louisiana Department of

Public Safety and Corrections Disciplinary Report, Institution: DWCC."  [doc. # 114-7, p. 1-80]. The dates of the reports and accompanying violations range from May 8, 2013, to February 5, 2014.  *Id.*  In each, a DWCC officer reported a violation of the facility's smoking policy.  *Id.* Some simply report inmates possessing tobacco or tobacco-related contraband, whereas others report inmates actually smoking tobacco.  *Id.*  Notably, thirty-four of the reports do not indicate whether the inmate violator was disciplined.  *Id.*

Plaintiff, in contrast, argues that Defendants did not enforce the smoking policy, despite the fact they posted the policy throughout the facility.  [doc. # 116].  He explains that the disciplinary reports are simply a "slap on the wrist" to inmate violators and do nothing to curb the ETS.  *Id.* at 2.  In support, he submits his own sworn statements attesting to the following: (1) The facility does not enforce the smoking policy; (2) Officers allow inmates to smoke in the bathroom; (3) The facility's policy of occasionally issuing disciplinary reports "amounts to a custom or practice of waiting for [Plaintiff's] exposure to occur and then haphazardly responding after the injuries have already occurred" and constitute mere "lip-service" to the smoking policy; (4) Plaintiff has personally observed officers and inmates smoking in violation of the smoking policy; and (5) When Plaintiff reviewed security camera footage covering his dormitory, he observed several inmates smoking in violation of the smoking policy and a correctional officer watching the individuals smoking but failing to take any action.  [doc. #s 1, 32, 45, 92, 96].[8] Plaintiff also presents several affidavits from other DWCC inmates who aver that inmates smoke

---

[8] Declarations made pursuant to 28 U.S.C. § 1746 constitute competent summary judgment evidence.  *Hart v. Hairston*, 343 F.3d 762, n.1 (5th Cir. 2003).

13

throughout the facility.  [doc. #s 28, 121, 121-3].[9]

Upon consideration, the Court finds that there is a genuine dispute concerning whether Defendants Evans and Huff were deliberately indifferent to Plaintiff's plight.  Essentially, the two Defendants claim that they enforced the smoking policy and that, to the extent that they did not, it was only because Plaintiff failed to identify a particular violator.  As to enforcement, however, Plaintiff presents evidence indicating that the Defendants merely pay "lip-service" to the policy and make no real effort to enforce it.  As to identifying a violator, the Fifth Circuit recently reversed a district court's grant of summary judgment where the warden of the facility denied the inmate's grievance because the inmate "did not identify the inmates who violated the no-smoking policies."  *Ware v. Batson*, 480 Fed. App'x 247, 248 (5th Cir. 2010); *see also Murrell v. Chandler*, 277 Fed. App'x 341 (5th Cir. 2008) (reversing summary judgment even when the plaintiff's complaints to officials regarding smoking were generalized complaints of his alleged exposure to ETS, not specific complaints identifying the actual violator).

Defendants also argue that Plaintiff never notified any correctional officers of his grievance prior to pursuing his administrative remedies.  This argument is essentially immaterial because Defendants Evans and Huff admit that they personally reviewed, investigated, and responded to Plaintiff's grievance.  And in any event, Defendants' contention that the correctional officers could not "recall" Plaintiff reporting a smoking violation does not definitively establish that the Plaintiff actually failed to inform the officers on duty that particular inmates were smoking in violation of the policy.

---

[9] The Court can consider the aforementioned evidence even though Plaintiff fails to cite to it in his opposition.  FED. R. CIV. P. 56(c)(3).

14

Defendants further argue that they were not deliberately indifferent because they disciplined all inmates that violated the policy.  However, all of the disciplinary reports that Defendants present were prepared after Plaintiff filed his initial grievance and some do not indicate that the inmate violators were disciplined.  [*See* doc. #s 114-4, p. 5; 114-7, p. 1].  Thus, there is a genuine issue as to whether Defendants enforced the policy prior to Plaintiff's grievance and as to whether Defendants' apparent practice of preparing a disciplinary report with no accompanying discipline actually deters smoking violations.  While the large volume of disciplinary reports could indicate that Defendants endeavor to stop smoking violations and are not deliberately indifferent, the sheer volume of reports could also indicate that Defendants are aware that smoking is prevalent, that the strategies taken to deter smoking are not working, and that, consequently, Defendants are deliberately disregarding the risks of ETS.[10]   In other words, the Court finds that there is a genuine dispute as to whether Defendants' enforcement tactics are so ineffective as to constitute deliberate indifference.[11]

_____

[10] In fact, the Fifth Circuit has reversed summary judgments where defendants presented disciplinary reports to support their arguments that they enforced their smoking policies.  *Ware*, 2008 WL at *2, *vacated*, 450 Fed. App'x 247 (5th Cir. 2010); *Murrell v. Chandler*, 2007 WL 869568, at *6 (E.D. Tex. 2007), *rev'd*, 277 Fed. App'x 341 (5th Cir. 2008); *Murrell v. Casterline*, 2007 WL 6201700, at *6 (W.D. La. 2007), *vacated*, 307 Fed. App'x 778 (5th Cir. 2008).

[11] *C.f. Hampton v. Brown*, 2012 WL 1491914 (W.D. La. March 4, 2012) (analyzing similar circumstances but finding no genuine dispute as to whether defendants enforced the non-smoking policy because: (1) the warden told inmates that they could only smoke near the back door; (2) the warden told inmates that they would be disciplined if caught smoking in an unauthorized area; (3) the shift supervisor would pepper spray any inmate caught smoking; (4) everyone knew that the warden did not allow smoking; (5) the warden would "dump the ashes in the inmate's hand" if he found ashtrays around an inmate's bed; (6) defendants produced disciplinary reports indicating that offenders were disciplined during the same time period that the plaintiff alleged he was exposed to ETS; (7) the plaintiff's only evidence consisted of vague assertions that the policy was not sufficiently enforced; and (8) the evidence indicated that plaintiff's claims "merely served as a means to achieve his goal of securing a transfer to [another]

ii. <u>Sufficient Connexity</u>

The Court also finds that Plaintiff has adduced enough evidence to create a genuine dispute as to whether Defendants Huff and Evans were sufficiently connected to the alleged constitutional deprivation.  In order for a prison official to be found liable under Section 1983, the official must have been personally involved in conduct causing the alleged deprivation of constitutional rights, or there must be a causal connection between the actions of the official and the constitutional violation sought to be redressed.  *Lozano v. Smith*, 718 F.2d 756, 768 (5th Cir. 1983).  In the absence of direct personal participation, a plaintiff must show that the violation occurred either as a result of a subordinate's implementation of the supervisor's affirmative wrongful policies or as a result of a breach by the supervisor of an affirmative duty specially imposed on him by state law.  *Id.*

Here, Plaintiff has demonstrated that the two Defendants' were personally involved because, as explained above, Defendants concede that Plaintiff notified them in writing that the facility's policy was not being enforced.  *See Murrell*, 277 Fed. App'x at 344-45 (finding that a plaintiff created a genuine issue of material fact as to whether the defendants were personally involved in violating his rights when he presented evidence showing that he advised the defendants in written grievances that the smoking policy was not being enforced).  Plaintiff has also demonstrated the requisite personal connexity by showing that there is a genuine dispute as to whether the two Defendants failed to act with deliberate indifference.  *See Atteberry v. Nocona Gen. Hosp.*, 430 F.3d 245, 254 (5th Cir. 2005) (holding that "supervisors may be liable for constitutional violations committed by subordinate employees when supervisors act, or *fail to*

facility . . . .").

16

*act*, with *deliberate indifference* to violations of others' constitutional rights committed by their subordinates.") (emphasis added).  Aside from personal involvement, Plaintiff has also demonstrated that there is a dispute concerning whether the two Defendants are liable because their subordinates implemented the alleged custom or policy of failing to enforce the institution's existing smoking policy.[12]

With all of that said, however, Plaintiff has failed to establish a genuine issue of material fact concerning whether Defendant LeBlanc was personally involved or causally connected to the alleged constitutional violation.  Plaintiff alleges that LeBlanc failed to prevent officials at DWCC from exposing him to ETS, [doc. # 1], but fails to support this allegation with any evidence.  Plaintiff does not produce any evidence showing that LeBlanc was deliberately indifferent or otherwise personally involved; to the contrary, as Secretary for the Louisiana DOC, LeBlanc has no personal involvement in the day-to-day operations at DWCC.  In addition, Plaintiff fails to produce any evidence showing that LeBlanc was responsible for the alleged custom or practice of turning a blind eye to the facility's smoking policy.[13]

---

[12] An official policy contemplates a "persistent, widespread practice of . . . officials or employees, which although not authorized by officially adopted and promulgated policy, is so common and well settled as to constitute a custom that fairly represents [the entity's] policy." *Cozzo v. Tangipahoa Parish Council–President Gov't*, 279 F.3d 273, 289 (5th Cir. 2002).

[13] Other courts have also dismissed Defendant LeBlanc in ETS exposure cases for the same reasons.  *See, e.g., Kouris v. LeBlanc*, 2014 WL 1652517, at *4 (W.D. La. 2014) (granting summary judgment where there was no evidence of LeBlanc's personal involvement); *Black v. LeBlanc*, 2013 WL 1500990 (W.D. La. 2013) (rejecting inmate's argument that LeBlanc should have remedied the ETS situation and holding that LeBlanc could not be deemed personally involved simply because he signed his name to an order denying an administrative appeal); *Perkins v. Terrell*, 2010 WL 1141223 (W.D. La. 2010) (holding that a lack of a satisfactory response to an administrative grievance does not constitute personal involvement or the implementation of an unconstitutional policy); *Jacobs v. LeBlanc*, 2011 WL 1043239, at *3 (M.D. La. 2011).

Overall, construing the foregoing evidence in the light most favorable to the non-movant, the Court finds that Plaintiff's proffered summary judgment evidence suffices to establish a question of fact regarding whether Defendants Evans and Huff have been deliberately indifferent to a substantial risk of serious harm by failing to enforce the facility's smoking policy. Accordingly, Defendants Evans and Huff are not entitled to qualified immunity at this time and their Motion for Summary Judgment should be **DENIED**.[14]  Defendant LeBlanc, however, has shown that there is no genuine issue of material fact concerning whether he violated Plaintiff's right and that he is, therefore, entitled to qualified immunity.  Thus, the Motion for Summary Judgment, with respect to Leblanc, should be **GRANTED**.

## Conclusion

For the reasons discussed above, **IT IS RECOMMENDED** that Defendants' Motion, [doc. # 114], be **GRANTED IN PART**, and that Plaintiff's claims against Defendant LeBlanc be **DISMISSED**, with prejudice, in their entirety.

---

[14] To reiterate, Defendants do not claim that there is no genuine dispute as to whether Plaintiff was exposed to unreasonably high levels of ETS (i.e. the objective prong of the *Helling* analysis).  Thus, as the Court finds that there is a genuine dispute surrounding Huff's and Evans' subjective state of mind, the Court finds that there is a genuine dispute as to whether the two Defendants violated Plaintiff's Eighth Amendment right.  This is enough to support a finding that the two Defendants are not entitled to qualified immunity.  *See Murrell*, 277 Fed. App'x at 344 (finding that because there was a genuine issue as to whether the defendants violated the plaintiff's Eighth Amendment right, the defendants were not entitled to qualified immunity).

On a separate yet related note, Defendants argue that Plaintiff has failed to show that they acted objectively unreasonable in light of clearly established law (i.e. the second step in the qualified immunity analysis) because it "was not clearly established at the time of the events in question, or at present, that broad conclusory allegations of civil rights violations are sufficient to state a claim for personal liability."  [doc. # 114-2, p. 14].  Defendants, however, mischaracterize the right at issue.  The right at issue is Plaintiff's Eighth Amendment right to be free from unreasonable exposure to ETS.  *Helling*, 509 U.S. at 35.  The Supreme Court clearly established this right in 1993.  *Johnson v. Epps*, 479 Fed. App'x 583, 591 (5th Cir. 2012) (citing *Helling*, 509 U.S. at 35).

**IT IS FURTHER RECOMMENDED** that Defendants' Motion, [doc. # 114], be **GRANTED IN PART**, and that Plaintiff's claim for monetary damages against all Defendants in their official capacities be **DISMISSED WITH PREJUDICE**.[15]

**IT IS FURTHER RECOMMENDED** that Defendants' Motion, [doc. # 114], be otherwise **DENIED**.[16]

Under the provisions of 28 U.S.C. § 636(b)(1)(C) and Rule 72(b), parties aggrieved by this Recommendation have **fourteen (14) days** from service of this Report and Recommendation to file specific, written objections with the Clerk of Court. A party may respond to another party's objections within **fourteen (14) days** after being served with a copy of any objections or response to the District Judge at the time of filing. A courtesy copy of any objection or response or request for extension of time shall be furnished to the District Judge at the time of filing. Timely objections will be considered by the District Judge before he makes a final ruling.

**A PARTY'S FAILURE TO FILE WRITTEN OBJECTIONS TO THE PROPOSED FINDINGS, CONCLUSIONS AND RECOMMENDATIONS CONTAINED IN THIS REPORT WITHIN FOURTEEN (14) DAYS FROM THE DATE OF ITS SERVICE SHALL BAR AN AGGRIEVED PARTY, EXCEPT ON GROUNDS OF PLAIN ERROR, FROM ATTACKING ON APPEAL THE UNOBJECTED-TO PROPOSED FACTUAL**

---

[15] As mentioned, Defendants do not seek summary judgment on Plaintiff's injunctive relief claim against them in their official capacities. Thus, this claim against Defendants Evans and Huff remains. *See Ex parte Young*, 209 U.S. 123, 159-60 (1908) (recognizing that state officials may be held liable for injunctive relief even in their official capacities).

[16] Plaintiff should note that the Court is not suggesting that he will or will not ultimately recover on his claims. Rather, the Court merely concludes that genuine issues of material fact exist.

**FINDINGS AND LEGAL CONCLUSIONS ACCEPTED BY THE DISTRICT JUDGE.**

In Chambers, Monroe, Louisiana, this18th day of August, 2014.

KAREN L. HAYES
UNITED STATES MAGISTRATE JUDGE